CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 27 2006

JOHN F. CORCORAN, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal Case No. 4:04CR70083 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| LANNY BENJAMIN BODKINS ) | By: Hon. Glen E. Conrad |
| ) | United States District Judge |
| Defendant. ) | |

This case is before the court on defendant's motion for post-trial relief. The defendant's motion claims that his substantial assistance to the government warrants a downward departure from the minimum statutory sentence in this case, due to constitutional violations and breaches of an agreement between the defendant and representatives of the United States Attorney's Office. The court held an evidentiary hearing on the motion on April 17, 2006. For the following reasons, the court will deny the defendant's motion.

## BACKGROUND

Lanny Benjamin Bodkins, Anthoine Plunkett, and Darel Keith Taylor were indicted by a grand jury on February 17, 2005, and charged with: conspiracy to travel in interstate commerce with the intent to commit murder for pecuniary gain; travel in interstate commerce with the intent to commit murder for pecuniary gain, aiding and abetting; conspiracy to travel in interstate commerce with the intent to commit interstate stalking; travel in interstate commerce with the intent to commit interstate stalking, aiding and abetting; and use of a firearm during and in relation to a crime of violence resulting in death, aiding and abetting. The United States filed Notices of Intent to Seek the Death Penalty as to Bodkins and Plunkett on February 17, 2005.

Taylor had confessed to involvement in the murder of Tyree Wimbush in September of 2002, during investigation of the murder, and had entered into a plea agreement with the government. Pursuant to that agreement, he pled guilty to two counts of the indictment, conspiracy to travel in interstate commerce with the intent to commit murder for pecuniary gain (Count One), and use of a firearm during and in relation to a crime of violence resulting in death, aiding and abetting (Count Five).

In the weeks prior to trial of the remaining defendants, the parties engaged in limited plea discussions. On August 12, 2005, Bodkins made a proffer to the government that yielded information that was substantial to the government's case. The government offered Bodkins a plea agreement, pursuant to which Bodkins would receive a life sentence in return for his testimony against Plunkett at trial. Bodkins rejected the offer, and the case went to trial.

The trial began on August 15, 2005. Pursuant to his plea agreement, Taylor testified at trial. Bodkins testified at trial in his own defense, admitting both his own and Plunkett's involvement in the murder. On September 2, 2005, Bodkins and Plunkett were convicted by a jury on all counts of the indictment. The evidence at trial established that Plunkett hired Bodkins and Taylor to murder Tyree Wimbush.

During the penalty phase of the trial, the government moved to withdraw the death notices as to defendants Bodkins and Plunkett. The court granted this motion. Bodkins and Plunkett now stand convicted of three capital offenses which could be punishable only by life imprisonment without possibility of release and two offenses which could be punishable by a term of years up to life imprisonment without possibility of release.

Taylor was sentenced on December 12, 2005. The court granted the government's motion for a downward departure for substantial assistance, sentencing Taylor to 180 months of incarceration on Count One and 120 months of incarceration on Count Five, to run consecutively.

Defendant Bodkins has filed a motion for post-trial relief, asserting that the court should find that he is entitled to a motion for a downward departure at sentencing under the United States Sentencing Guidelines, § 5K1.1.[1] A hearing on the issue of whether an evidentiary hearing on this motion would be granted was held on January 12, 2006, and the court gave the parties additional time to file necessary affidavits and memoranda. On February 17, 2006, the court granted the motion for an evidentiary hearing, and appointed supplemental counsel for the hearing. An evidentiary hearing was held on April 17, 2006.

## ISSUES

The following issues are before the court:

(1)   Whether the defendant is entitled to a substantial assistance motion because the government's refusal to offer Bodkins a plea agreement with provision for such a motion was racially motivated and in violation of the Constitution; and

(2)   Whether the defendant is entitled to a substantial assistance motion by virtue of a plea agreement.

---

[1] Throughout the motions, affidavits, and testimony of the parties, Bodkins is said to be seeking relief by way of a § 5K1.1 motion. The appropriate motion for a downward departure for substantial assistance in his situation, however, would be a motion pursuant to 18 U.S.C. § 3553(e), which would allow for departure below a statutory minimum sentence. See 18 U.S.C. § 3553(e).

3

## APPLICABLE LAW

I. <u>Whether the defendant is entitled to a motion for substantial assistance because the government's refusal to offer Bodkins a plea agreement with provision for such a motion was racially motivated and in violation of the Constitution</u>

Prosecutorial decisions are given a "presumption of regularity," and prosecutors are given broad discretion in decisions such as whether to prosecute and what charge to file or bring before a grand jury. <u>United States v. Armstrong</u>, 517 U.S. 456, 464 (1996). Selectivity in the enforcement of criminal laws is constrained by the Constitution, however. <u>United States v. Wayte</u>, 470 U.S. 598, 608 (1985). The Due Process Clause of the Fifth Amendment prohibits the government from basing the decision to prosecute a defendant upon the defendant's race. <u>United States v. Olvis</u>, 97 F.3d 739, 743 (4th Cir. 1996).

To establish a race-based claim for selective prosecution, a defendant must show that the prosecution "had a discriminatory effect and that it was motivated by a discriminatory purpose." <u>Id.</u> at 743. The defendant must prove by "clear evidence" that (1) "similarly situated individuals of a different race were not prosecuted," and that (2) "the decision to prosecute was invidious or in bad faith." <u>Id.</u> (internal citations omitted). The United States Court of Appeals for the Fourth Circuit has applied this selective prosecution analysis to a situation where a defendant claimed that a prosecutor rejected his plea offer because of his race. <u>Orbe v. True</u>, 82 Fed. Appx. 802, 809-10 (4th Cir. 2003).

II. <u>Whether the defendant is entitled to a motion for substantial assistance by virtue of a plea agreement</u>

The Fourth Circuit has held that the enforcement of a conditional promise to make a § 5K1.1 motion can be enforced by the court. <u>United States v. Conner</u>, 930 F.2d 1073, 1075 (4th

4

Cir. 1991). The Court found that, "once the government uses its § 5K1.1 discretion as a bargaining chip in the plea negotiation process, that discretion is circumscribed by the terms of the agreement ... [t]he task of the trial court is to determine if the government has in fact agreed to make the motion in return for substantial assistance, and, if so, whether the defendant has satisfied his contractual obligations." Id. The party alleging that an agreement has been breached has the burden of proving, by a preponderance of the evidence, that the other party has breached the agreement. Id. at 1076. If the court finds that one of the parties has breached such an agreement, the court can determine whether specific performance or other relief is called for. Id.

The court must first determine whether the government has, in fact, bargained away its discretion by agreeing to make a motion for a downward departure. United States v. Snow, 234 F.3d 187, 190 (4th Cir. 2000). The Fourth Circuit has held that enforcement of a conditional promise to make a § 5K1.1 motion should be treated by the court in the same way as enforcement of a plea agreement. Conner, 930 F.2d at 1075. Although the Fourth Circuit has suggested that lower courts require that all plea agreements be reduced to writing, an oral plea agreement is not necessarily invalid and oral plea agreements are enforceable. See United States v. McQueen, 108 F.3d 64, 66 (4th Cir. 1997); United States v. Iaquinta, 719 F.2d 83, 84 n.2 (4th Cir. 1983). The defendant must establish the existence of an oral agreement, however. See United States v. Dailey, 42 Fed. Appx. 665, 666 (4th Cir. 2002) (differentiating McQueen, in which the transcript of the guilty plea hearing established that the government had made an oral promise, from a situation in which there was no evidence in the record to support the claim that the defendant's guilty plea was induced by the government's promise).

5

The Fourth Circuit has held that "a waiver of prosecutorial discretion by way of plea agreement must be explicit." Snow, 234 F.3d at 190 (emphasis added). In making this observation, the Court referred to a case from the United States Court of Appeals for the Third Circuit, United States v. Huang, 178 F.3d 184, 188-89 (3d. Cir. 1999), in which the clause that the defendant was trying to enforce did not specifically reserve the sole discretion to evaluate whether the defendant rendered substantial assistance to the government. Snow, 234 F.3d at 190 (citing Huang, 178 F.3d at 188). The Third Circuit found that the agreement, which was "implicitly subject" to the United States Sentencing Guidelines, gave the government discretion to file a substantial assistance motion even when the government did not expressly reserve discretion in the plea agreement. Id. Without an explicit waiver, the government does not give up its discretion to move for substantial assistance. For example, the Fourth Circuit found that an agreement which stated, "if the defendant renders complete and truthful ... cooperation and testimony, the United States may, but is not required to, make a motion of substantial assistance," did not create an enforceable promise because the government "explicitly reserved discretion." United States v. Robinson, 176 F.3d 476 (4th Cir. 1999) (unpublished table decision) (internal quotations omitted) (emphasis added). In a similar situation, a defendant provided information to the government "[p]ursuant to a standard proffer agreement." Han v. United States, 99 F.3d 401 (2d Cir. 1995) (unpublished table decision). The agreement did not contain a promise to issue a § 5K1.1 letter and the Court therefore found that there was no enforceable promise to file a motion for substantial assistance. Id.

6

## **FINDINGS OF FACT**

After consideration of the affidavits filed with the court and the testimony received at the evidentiary hearing, the court makes the following findings of fact:

(1) Taylor pled guilty pursuant to a plea agreement that provided that he might be given an opportunity to earn substantial assistance credit. Taylor provided information early in the investigation and testified for the government at trial. The government made a motion for a downward departure below the mandatory minimum, which was granted by the court at sentencing.

(2) On July 22, 2005, Plunkett was offered the same plea agreement terms in an email to his counsel, Roger Groot. The email offered that:

> Plunkett pleads to the superceding indictment and agrees to cooperate and testify, if necessary against Bodkins. If his assistance is substantial (and this does not necessarily mean testifying if Bodkins should ultimately plead guilty) we would file 5K and you could argue for whatever appropriate sentence you felt was warranted before Judge Conrad. This is the same offer we made to Taylor. Let me know if this is something your client would consider.

Plunkett did not accept the offer.

(3) During a discussion between Assistant United States Attorney Craig Jacobsen and counsel for Bodkins, James Turk, Jr., Jacobsen mentioned the race of the defendants.[2] As a result of this conversation, the issue of race was again raised at the August 1, 2005 meeting with United States Attorney John Brownlee.

(4) The court finds that statements made by the government attorneys regarding race merely acknowledged the issue from a tactical or strategic perspective, and did not evince any

---

[2]Plunkett is African-American, and Bodkins and Taylor are Caucasian. The murder victim, Tyree Wimbush, was African-American.

7

discriminatory motive or animus towards Bodkins. The court finds that the government's disparate treatment of Bodkins and Plunkett resulted from consideration of the different circumstances of the codefendants: Bodkins' more substantial criminal history, including a violent crime committed shortly after the murder, in comparison to Plunkett's relatively meager criminal history; the difference in culpability between the shooter and the hirer in a murder for hire; and the relative strength of the case against Bodkins as compared to the strength of the case against Plunkett. In addition, the court finds that the government's subsequent decision to offer Bodkins a life term after his proffer, separate and distinct from any treatment of Plunkett, further diffuses Bodkins' argument that prosecutorial decisions were based upon the race of the defendants. If Bodkins had accepted the government's proposed agreement, it is possible that the two Caucasian defendants could have testified against the only African-American defendant.

(5) Counsel for Bodkins, Turk and William Cleaveland, Assistant United States Attorneys Jacobsen and Anthony Giorno, and United States Attorney Brownlee, met on August 1, 2005. During the meeting, one of the attorneys mentioned the race of the defendants, although it was not a focus of the discussion. At the meeting, Brownlee offered that if Plunkett and Bodkins would both plead guilty, he would recommend that the death notices be withdrawn as to both defendants. Inasmuch as Plunkett had already rejected an agreement which could have resulted in a term of years, Bodkins' attorneys did not seriously consider or pursue this offer.

(6) On August 10, 2005, Bodkins' attorneys wrote a letter to the Capital Crimes Unit ("CCU"), discussing their perceptions about racial issues in the case and representing that

8

Bodkins would "accept the plea offer that had been given and rejected by Plunkett, given and accepted by Taylor." Letter to Margaret Griffey, Chair Person of Capital Crimes Unit (Aug. 10, 2005). The United States Attorney's Office received a copy of this letter. The court notes that the wording of this letter did not indicate that Bodkins would only accept an agreement with the possibility of a downward departure for substantial assistance.

(7)  Bodkins made a proffer to the government on August 12, 2005. The government attorneys indicated to defendant's counsel that they were only interested in information that could be independently corroborated. Before the proffer began, Jacobsen told Bodkins that there was overwhelming evidence against him, and that any option at that point involved going to trial. Jacobsen said he was not making any promises to Bodkins as part of the proffer, but thought that if Bodkins did choose to testify at trial, the jury would not sentence him to death.

(8)  Bodkins, Turk, Cleaveland, and Jacobsen signed a proffer agreement on August 12, 2005, prior to Bodkins' proffer. The agreement provided that, "[t]he United States Attorney, acting in his sole discretion, will determine whether to enter into a plea agreement with you." Proffer Letter (Aug. 12, 2005) (emphasis added). Additionally, the agreement stated that, "[t]he giving of this proffer in no way binds the United States Attorney nor does it constitute substantial assistance under the provisions of Sentencing Guideline 5K1.1 and Title 18, United States Code, Section 3553(e)." Id. (emphasis added). The letter did not secure any "particular disposition" in the case, and was intended to be the "full and complete understanding among the parties." Id. The court finds and concludes that this was a binding agreement between the parties.

Case 4:04-cr-70083-GEC-RSB   Document 724   Filed 04/27/06   Page 9 of 13   Pageid#: 2095

(9) Based on past dealings with the government, Cleaveland and Turk testified as to their belief that if Bodkins gave substantial information to the government, he would get a substantial assistance motion, regardless of the language of the proffer letter and the disclaimers made by Jacobsen. They thought that the provisions in the letter stating that no promises were made were used to protect the government, so that a cooperating defendant who testified at trial could not be impeached with the suggestion that he was promised something by the government for his testimony. Turk and Cleaveland advised their client of these expectations. The court finds that the attorneys sincerely believed that Bodkins would receive a concession from the government, if Bodkins provided substantial information subject to independent corroboration. The court finds that the attorneys' expectations in this regard were not unreasonable.

(10) During the proffer, Bodkins identified a telephone number, showing that a call was made from Plunkett's mother's telephone card to a number in Johnson City, Tennessee. The number was registered to Taylor, and the call was made approximately three hours after the murder.[3] This information was substantial and independently corroborated. The information was very useful to the government in the prosecution of Plunkett.

(11) After the proffer, Brownlee offered that he would recommend that the CCU withdraw the death notice as to Bodkins, in return for Bodkins' plea of guilty and testimony at trial. Thus, the court finds that the government did offer Bodkins a substantial benefit as a

---

[3] Bodkins initially identified the Tennessee telephone number as belonging to his girlfriend. Although it was ultimately found that the number belonged to Taylor, the government believed that Bodkins' information was truthful and that he was merely mistaken as to the precise identity of the receiving telephone number.

10

result of the information he provided. As a result of the proffer, the United States Attorney offered Bodkins the opportunity to plead guilty and receive a life term and, unlike before, this offer was not contingent upon Plunkett's acceptance of the same terms. The offer was communicated to Bodkins, who declined to enter into the agreement.

(12) On September 1, 2005, Bodkins testified at trial in his own defense. He testified fully about his involvement in the murder, the significance of the telephone number discussed during the proffer, and Plunkett's involvement in the murder.

## CONCLUSIONS OF LAW

(1) The court concludes that there is no "clear evidence" that the government's refusal to offer Bodkins a plea agreement with a provision for a substantial assistance motion was based on any unconstitutional, racially-related motive. Given the court's finding that any statements by the government attorneys about the defendant's race were voiced as purely tactical considerations for trial, the court concludes that treatment of this defendant in regard to a plea agreement was not grounded upon race. This conclusion is further supported by the differing situations of the codefendants as to other significant factors, and the government's willingness to offer Bodkins a plea agreement after the proffer that could have resulted in both Bodkins and Taylor testifying against Plunkett at trial.

(2) The court concludes that Bodkins is not entitled to a motion for substantial assistance based upon the claim that the government's refusal to offer Bodkins a plea agreement with a provision for a motion for substantial assistance was unconstitutionally motivated by the defendant's race.

11

(3) The court also concludes that Bodkins has not proven the existence of an agreement with the government other than that stated in the proffer letter. Based on the court's findings of fact regarding the communications between the parties, the court finds and concludes that the government attorneys did not understand Bodkins' proffer to be contingent on the receipt of a plea agreement with terms identical to those offered to Taylor and Plunkett. While Jacobsen and Giorno certainly understood that Bodkins hoped to receive a substantial assistance motion based on his proffer, they had repeatedly acknowledged that the Assistant United States Attorneys do not have the power to bind the United States Attorney and the CCU to terms in a capital case in which death notices had been issued. The court concludes that, while not unreasonable, the understandings and expectations of Bodkins' attorneys as to the effect of a proffer, based on local custom and practice, are not sufficient to overcome the clear language of the proffer letter.

(4) The court concludes that Bodkins has not proven by a preponderance of the evidence that an understanding between the parties explicitly waived the prosecutorial discretion to file a motion for substantial assistance. In fact, any such discretion was explicitly <u>reserved</u> to the government by the terms of the signed proffer letter. See Proffer Letter (Aug. 12, 2005) ("The United States Attorney, acting in his sole discretion, will determine whether to enter into a plea agreement with you.").

(5) The court concludes that Bodkins has not carried the burden of proving the existence of a binding agreement that bargained away the government's discretion to file a motion for substantial assistance. Simply stated, there was no "meeting of the minds."

## DISPOSITION

The court concludes that there is no duty of the government to move for a downward departure for substantial assistance in this case. Refusal to offer a plea agreement to Bodkins with a provision requiring the government to move for a downward departure was not based upon the unconstitutional motive of race, and the government did not bind itself to move for a departure based upon Bodkins' proffer. The defendant's motion must therefore be denied.

The Clerk is directed to send certified copies of this Memorandum Opinion and the accompanying Order to all counsel of record.

ENTER: This 27th day of April, 2006.

*[signature]*

United States District Judge